JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

John J. Lyons, Jr. and Lynne M. Lyons, h/w

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Steven B. Barrett, Esquire
375 Morris Road, Lansdale PA 19446
215-661-0400

## DEFENDANTS
Lieutenant David J. Nosal, Trooper Brendan Shearn, Trooper Shaun Maher, Trooper Colin Allard, Trooper Christopher Holdeman and PA State Police Department

County of Residence of First Listed Defendant    Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ❏ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 2  U.S. Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | **PERSONAL INJURY** | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | ❏ 365 Personal Injury - Product Liability | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | ❏ 368 Asbestos Personal Injury Product Liability | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 891 Agricultural Acts |
| | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | ❏ 865 RSI (405(g)) | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983
Brief description of cause:
Malicious Prosecution Under the Fourth and Fourteenth Amendments of U.S. Constitution

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*

JUDGE _____    DOCKET NUMBER _____

DATE  3/20/18

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

JOHN J. LYONS, JR,                              :
LYNNE M. LYONS, h/w                             :
401 Silver Leaf Circle                          :
Trappe, PA 19426                                :
                   Plaintiffs    :
                             :    CIVIL ACTION NO.
    v.                                         :
                             :
LIEUTENANT DAVID J. NOSAL                       :    JURY TRIAL DEMANDED
2047C Bridge Road                               :
Schwenksville, PA 19473                         :
                             :
TROOPER BRENDAN SHEARN                          :
2047 C Bridge Road                              :
Schwenksville, PA 19473                         :
                             :
TROOPER SHAUN MAHER                             :
2047 C Bridge Road                              :
Schwenksville, PA 19473                         :
                             :
TROOPER COLIN ALLARD                            :
2047 C Bridge Road                              :
Schwenksville, PA 19473                         :
                             :
TROOPER CHRISTOPHER HOLDEMAN :
2047 C Bridge Road                              :
Schwenksville, PA 19473                         :
                             :
PENNSYLVANIA STATE                             :
POLICE DEPARTMENT                               :
1800 Elmerton Ave.                              :
Harrisburg, PA  17110                           :
                 Defendants    :

## <u>COMPLAINT</u>

Plaintiffs, John J. Lyons, Jr. and Lynne M. Lyons, husband and wife, by their attorneys,

Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C., file this Complaint against Defendants,

Lieutenant David J. Nosal, Trooper Brendan Shearn, Trooper Shaun Maher, Trooper Colin Allard,

and Trooper Christopher Holdeman, in their individual capacities, and Defendant, the Pennsylvania State Police Department, and in support thereof, aver as follows:

## INTRODUCTION

This is a Civil Rights Complaint for money damages for the extraordinary physical and emotional injuries suffered by Plaintiff, John J. Lyons, Jr.  Mr. Lyons was wrongfully, with deliberate indifference to his constitutional rights and with malicious intent, accused of and charged with the Possession of Instruments of Crime, Tampering with/Fabricating Physical Evidence, Disorderly Conduct, and Invasion of Privacy following an incident occurring on February 18, 2017. This incident played out like a nightmare scene in a "B" movie.

## THE PARTIES

1.      Plaintiffs, John J. Lyons, Jr. ("John") and Lynne M. Lyons ("Lynne"), husband and wife, have been married 28 years and reside at 401 Silver Leaf Circle, Trappe, PA 19426.

2.      Defendant, David J. Nosal, is a lieutenant of the Pennsylvania State Police Department assigned to the Pennsylvania State Police Department Skippack Barracks located at 2047C Bridge Road, Schwenksville, PA 19473. Trooper Nosal supervised the criminal investigation of Mr. Lyons.

3.      Defendant, Brendan Shearn, is a Pennsylvania State Police Trooper assigned to the Pennsylvania State Police Department Skippack Barracks located at 2047C Bridge Road, Schwenksville, PA 19473. Trooper Shearn assisted in the criminal investigation of Mr. Lyons. Defendant Shearn prepared and signed the Affidavit of Probable Cause and prepared and filed the criminal complaint against Mr. Lyons.

4.      Defendant, Shaun Maher, is a Pennsylvania State Police Trooper assigned to the Pennsylvania State Police Department Skippack Barracks located at 2047C Bridge Road, Schwenksville, PA 19473. Trooper Maher assisted in the criminal investigation of Mr. Lyons.

5.      Defendant, Colin Allard, is a Pennsylvania State Police Trooper assigned to the Pennsylvania State Police Department Skippack Barracks located at 2047C Bridge Road, Schwenksville, PA 19473. Trooper Allard assisted in the criminal investigation of Mr. Lyons.

6.      Defendant, Christopher Holdeman, is a Pennsylvania State Police Trooper assigned to the Pennsylvania State Police Department Skippack Barracks located at 2047C Bridge Road, Schwenksville, PA 19473. Trooper Holdeman assisted in the criminal investigation of Mr. Lyons.

7.      Plaintiffs file the instant action against the Defendants in their individual capacities and not in their official capacities as officers of the Pennsylvania State Police Department (collectively the "Trooper Defendants").

8.      Defendant, the Pennsylvania State Police Department ("PA State Police"), is a government entity of the Commonwealth of Pennsylvania, with a principal place of business at 1800 Elmerton Avenue, Harrisburg, Pennsylvania 17110.

## JURISDICTION AND VENUE

9.      This action is brought pursuant to 42 U.S.C.A. 1983 and 1988, and this Court has jurisdiction under 28 U.S.C.A. 1331 and 28 U.S.C.A. 1343. State and federal claims herein arise out of a common nucleus of operative facts and this Court, therefore, has jurisdiction over the entire matter under F.R.C.P. 54(b).

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims occurred in the Eastern District of Pennsylvania.

## FACTS

11.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

### THE INCIDENT

12.     On February 18, 2017, Perkiomen Valley High School ("Perkiomen Valley") hosted a swim meet known as the Perkiomen Invitational Swim Meet ("Swim Meet" or "Meet").

13.     Plaintiffs, who regularly volunteer to help at Perkiomen Valley's swim meets because their daughter is on the swim team, volunteered to help at this Swim Meet as well.

14.     Early in the morning, before the start of the Meet, Mr. Lyons was asked to get ice from an ice machine in a hallway around the corner behind the boy's locker room. He was accompanied by another parent volunteer, Wayne Baker, whose daughter was also on the swim team.

15.     The ice was to fill coolers next to tables which formed a make-shift snack bar outside the boy's locker room, and which was manned at all times by other parent volunteers.

16.     Mr. Lyons and Mr. Baker returned with the ice at approximately 8:30 a.m., and, in the process, walked past the boy's locker room.

17.     Hearing girls singing in the boy's locker room, and believing that the team inside was his daughter's team, Mr. Lyons decided to innocently capture the sound on his cell phone to share it with his daughter later.

18.     Mr. Lyons took several steps into the hallway leading to the door of the boy's locker room, held his cell phone above his head, took no "video", and recorded approximately 20 seconds of singing emanating from the locker room.

19.     Mr. Baker watched Mr. Lyons from the entranceway to that hallway, and Mr. Lyons, at all times, was also within the plain view of parents volunteering at the snack bar, and within the plain view of passersby.

20.     Mr. Lyons then turned around, exited the hallway, met Mr. Baker where he had been standing and watching, and mentioned to Mr. Baker that he was excited that he was able to record the brief moment for his daughter.

21.     Immediately thereafter, Mr. Lyons played the audio clip to Karen Baker, Wayne Baker's wife, and also Donna Pearson, another parent volunteer, both of whom were only steps away tending to the snack bar.

22.     While neither were impressed, Karen Baker said that the recording showed nothing but a wall, could barely be heard, and suggested it was probably useless.

23.     Mr. Lyons never entered the locker room.  Mr. Lyons never used his phone to record any video.  Mr. Lyons was not in a position to view anyone in the locker room.  (Nor would he).

24.     Shortly thereafter, Donna Pearson texted Mr. Lyons and said she had heard a couple of girls, presumably from Perkiomen Valley's swim team, were upset because they didn't know who was recording.

25.     Disappointed by the girls being upset, Mr. Lyons then deleted the clip in order to protect his daughter from being criticized by her teammates.

26.     Mr. Lyons then went up to the pool balcony and watched the first two races.

27.     At approximately 8:55 a.m., Mr. Lyons left the Swim Meet and went to a local gym for a regularly scheduled class that started at 9:15 a.m.

28.     At approximately 10:20 a.m., Mr. Lyons left the gym, then stopped to get a cup of coffee at a nearby Wawa.

29.     Mr. Lyons then went home, showered, let the dog out, and then began to drive back to the high school for the Swim Meet (a mile away).

30.     Unfortunately, what was to have been a dad capturing a moment for his daughter devolved into a nightmare for Mr. Lyons.

## CRIMINAL INVESTIGATION

31.     Unbeknownst to Mr. Lyons, a young girl, who he assumed was on Perkiomen Valley's swim team, took offense to his recording on his phone and complained to some coaches.

32.     Eventually, administrators of the Perkiomen Valley High School were notified, who then notified the local Pennsylvania State Police Barracks in Skippack.

33.     State Troopers Maher, Allard and Holdeman arrived at the high school at approximately 11:10 a.m.

34.     Mr. Baker, who was still present at the Swim Meet, was summoned by the administrators and State Troopers to identify Mr. Lyons from video surveillance footage at the school.

35.     The surveillance footage shown to Mr. Baker depicted Mr. Baker and Mr. Lyons retrieving the ice earlier in the morning.

36.     Already on his way back to the Swim Meet, Mr. Lyons received a phone call from Mr. Baker, who said "State troopers are here and they want to speak to you.  Let them know when you see them that I called you and told you to speak with them".

37.     Mr. Lyons replied, "I am in the car now and heading there. I will be there in a minute".

38.     Soon thereafter, Mr. Lyons entered the top circle driveway of the parking lot next to the front entrance to the high school where State Police cars were parked.

39.     Mr. Lyons parked, walked towards the police cars, and, when one pulled out and around the circle to his left, Mr. Lyons crossed a median and waved the State Trooper down.

40.     The State Trooper (believed to be Trooper Allard) asked if he could help, to which Mr. Lyons replied, "I think you want to talk with me" and he identified himself.  The Trooper parked, and said, "I do, let me step out".

41.     Since other cars were behind the Trooper, Mr. Lyons asked him to drive down by Mr. Lyons' car.  He agreed, but first asked for Mr. Lyons' phone, and Mr. Lyons, with two cell phones in his possession, immediately gave both to him. The Trooper then parked in front of Mr. Lyons' car.

42.     The Trooper told Mr. Lyons that he and a detective wanted to talk to him at the State Police Barracks and gave no further explanation, or read him his constitutional rights.

43.     The Trooper said it was "procedure" to handcuff Mr. Lyons, and "procedure" to take him to the State Police Barracks.  Completely innocent and compliant, Mr. Lyons was handcuffed in the back of the Trooper's vehicle and taken to the Barracks.

44.     Upon arrival at the Barracks, Mr. Lyons was re-handcuffed to a bench and told to wait for the detective.

45.     Eventually, Trooper Shearn, a detective, introduced himself and asked if Mr. Lyons had anything in his pockets, at which time he gave him his money and credit cards. Another Trooper asked minutes later for his belt.  Mr. Lyons was given no explanation as to why this was happening to him.

46.     Unbeknownst to Mr. Lyons at the time, the detective, presuming that Mr. Lyons was guilty, and that Mr. Lyons entered the girl's locker room and took video of "juvenile females" in "a

state of partial nudity," and presuming that he then deleted the recording to hide the evidence, interrogated Mr. Lyons.

47.     While in police custody, Mr. Lyons recounted his entire morning for Trooper Shearn, in detail, and, in particular, informed him that he did not enter any locker room, did not take any video inside any locker room, did not see anyone in the locker room, and that he merely recorded a sound bite for his daughter, and explained the circumstances under which he deleted the recording meant for his daughter.

48.     Mr. Lyons also suggested that Trooper Shearn contact Wayne Baker, Karen Baker and Donna Pearson to verify his account.

49.     Trooper Shearn prepared and eventually requested Mr. Lyons to sign a typewritten statement.

50.     Anything that Mr. Lyons said was totally ignored, and anything he expressed in his statement was likewise disregarded and ignored.

51.     Unbeknownst to Mr. Lyons at the time, Mr. Baker, who had been upset that something completely innocent was mischaracterized as a criminal event, went to the State Police Barracks in the afternoon, on his own accord, to report his account of what had happened, and to hopefully assist Mr. Lyons in defending against the unsupported allegations.

52.     Coincidently, and unbeknownst to Mr. Baker, he was at the State Police Barracks at the same time that Mr. Lyons was, and at the same time Mr. Lyons was being interrogated.

53.     Interrogated in a separate room, Mr. Baker gave his very careful and accurate account of what had occurred earlier that morning and completely corroborated, independently, Mr. Lyons' account.

54.     He, like Mr. Lyons, urged the State Troopers to contact his wife, Karen, as well as Donna Pearson, for their accounts since they too were key eyewitnesses to Mr. Lyons' activity.

55.     Mr. Baker also signed a typewritten statement, and, like Mr. Lyons, his account fell upon deaf ears, as his statement was simply disregarded and ignored.

56.     As it turns out, while Mr. Lyons and Mr. Baker were being interrogated, a State Trooper (believed to be Trooper Holdeman) also interviewed the minor complainant in a room at the Barracks at the same time.

57.     After being interrogated, Mr. Lyons was told by Trooper Shearn that he would need to "run his fingerprints to ensure he wasn't a fugitive".

58.     While waiting for the results of the fingerprints, Mr. Lyons' ankle was cuffed to a bench.

59.     Following the results of the fingerprints, Trooper Shearn authorized Mr. Lyons to leave with another State Trooper, who, amazingly, threatened that if Mr. Lyons were combative, the Trooper would be forced to defend himself at any cost.

60.     Told that he was honest, and that his account was corroborated by other witnesses, Mr. Lyons was led to believe that he was under investigation merely for "invasion of privacy," and was specifically told that the investigation would be inconsequential, despite the fact that he had been detained and cuffed twice in the Barracks.

61.     The State Troopers retained Mr. Lyons' phones, and proposed to return them in a day or two after they were searched.

62.     After a nightmare of a long afternoon at the State Police Barracks, a State Trooper finally drove Mr. Lyons back to the high school parking lot and released him.  Mr. Lyons then got in his car and drove home.

## CRIMINAL COMPLAINT

63.     Ten days later, on February 28, 2017, before the completion of any investigation of

Mr. Lyons' phones, and without interviewing Karen Baker and Donna Pearson, contemporaneous

eyewitnesses known to the State Troopers on February 18, 2017, the Defendant State Troopers filed

a criminal complaint for an arrest warrant to charge Mr. Lyons.  The criminal complaint read in part

as follows:

     a.  The Defendant did possess an instrument of crime, namely, an Apple iPhone, with intent to employ it criminally, in violation of Section 907(a) of the PA Crimes Code;

     b.  The Defendant believing that an official proceeding or investigation is pending or about to be instituted, did alter, destroy, conceal or remove any record, document or thing with the intent to impair its verity or availability in such proceeding or investigation in violation of Section 4910(1) of the PA Crimes Code;

     c.  The Defendant used an Apple iPhone to video record inside of a Perkiomen Valley High School locker room, occupied by several juvenile females, without their knowledge or consent, while they were in a state of partial nudity (wearing bathing suits and or towels), in high school locker room, a place where the above said females would have a reasonable expectation of privacy; and

     d.  The Defendant, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, did create a hazardous or physically offensive condition by an act that served no legitimate purpose, namely, entered a locker room at Perkiomen Valley High School which was occupied by several juvenile females and used his cell phone to record activity inside, in violation of Section 5503(a)(4) of the PA Crimes Code.

64.     The Affidavit of Probable Cause, in support of the criminal complaint, can only be

described as a deliberate and malicious misrepresentation to the Magistrate Judge due to what was

deliberately and maliciously omitted.

65.     The State Troopers deliberately and maliciously omitted Mr. Lyons' oral account

and his typewritten statement.

66.     Even worse, the Affidavit of Probable Cause mischaracterized what Mr. Lyons said, giving the impression that Mr. Lyons admitted to the violations, all directly contrary to Mr. Lyons repeated denials in his oral account and in his typewritten statement.

67.     In addition, the State Troopers also deliberately and maliciously omitted Mr. Baker's oral account and his typewritten statement.

68.     Mr. Baker's oral account and his typewritten statement contradicted the allegations in the Affidavit of Probable Cause.

69.     The State Troopers deliberately and maliciously chose not to interview Karen Baker or Donna Pearson, and perhaps others, who on the day of the incident would have immediately provided additional eyewitness accounts and statements exonerating Mr. Lyons.

70.     The filing of the criminal complaint prompted a media fury.

71.     The arrest of Mr. Lyons was broadcast on the evening news of virtually every local television station, was virulent on the sprawling internet, and was reported in local newspapers.

72.     Without any prior notice to Mr. Lyons, Mr. Lyons learned of the charges as he was on his way home from a business appointment, when he and his family became inundated with telephone calls, texts and messages.

## CRIMINAL CHARGES WITHDRAWN

73.     Incredulously, while Mr. Lyons hung in public ridicule, it was not until more than a month later, on March 28, 2017, that Karen Baker was interviewed, and not until March 29, 2017 that Donna Pearson was interviewed.

74.     They, of course, confirmed, as Mr. Lyons and Mr. Baker had confirmed earlier, that there was absolutely no merit whatsoever to any of the false charges against Mr. Lyons. They confirmed that Mr. Lyons was not in any locker room, and that he took no video in any locker room.

75.     It is further believed that the State Troopers by this time still had not completed any investigation of Mr. Lyons' cell phones.

76.     Finally, on April 4, 2017, after two excruciating months of dangling in the public domain, waiting for a preliminary hearing, which the State Troopers delayed, the wrongful charges against Mr. Lyons were withdrawn in their entirety.

## DAMAGES

77.     Mr. Lyons and his family have suffered greatly as a result of the conduct on the part of the State Troopers, and continue to suffer.

78.     It is his credibility, his reputation, his integrity, his livelihood, his reputation for good moral conduct, and his family's credibility and reputation, that have been forever tarnished and ruined.

79.     Mr. Lyons has faced public humiliation, condemnation and reprobation due to sensational media coverage on television, the internet, and newspaper reports, which, based upon the State Troopers' wrongful misconduct, wrongfully accused Mr. Lyons of entering inside a girl's locker room and using his cellphone to take "video" of "juvenile females" in "a state of partial nudity". True and correct copies of some local media reports are collectively attached hereto and incorporated herein as Exhibit "A".

80.     Public reaction was both predictable and swift. The community quickly ostracized Mr. Lyons and his family.

81.     People have accused Mr. Lyons, a dedicated husband and father of a son and two daughters, of being a pedophile, deviant and a pervert.

82.     As a result of the deplorably incompetent investigation and malicious prosecution by the Pennsylvania State Police, and the widespread media coverage brought about by their actions,

Mr. Lyons finds himself in a recurring nightmare, indelibly branded a pedophile, deviant, and pervert.

83.     Extraordinarily embarrassed, and self-conscious, he now shuns neighborhood events,  community events, school events, and church events, among others, because he is seen as a pariah.

84.     He suffered a loss of livelihood when his employer suspended him based on the false accusations, and the prospect of employment elsewhere is dubious because of what is revealed in any background check.

85.     The devastation to Mr. Lyons and his family, particularly his wife and children, is irreparable.

86.     One need only Google his name to understand, ever so slightly, the depth and permanency of his injury.

## COUNT I- 42 U.S.C. §1983 WRONGFUL DETENTION UNDER THE FOURTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
### (Plaintiffs vs. Trooper Defendants)

87.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

88.     At all relevant times herein, the Fourth and Fourteenth Amendment of the United States Constitution protects individuals against unreasonable searches and seizures, including wrongful detention.

89.     Mr. Lyons was wrongfully detained and arrested on February 18, 2017, when there was absolutely no probable cause to do so.

90.     The Trooper Defendants knew, or should have known, based on even the most rudimentary preliminary investigation, that they had absolutely no probable cause to detain or arrest Mr. Lyons.

91.     Mr. Lyons suffered, and continues to suffer, extraordinary damage as a result.

92.     Pursuant to 42 U.S.C. §1988, Plaintiffs seek compensatory damages, punitive damages, and attorney's fees and costs.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Trooper Defendants in their individual capacity for compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT II- 42 U.S.C. §1983- MALICIOUS PROSECUTION UNDER THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION
### (Plaintiffs vs. Trooper Defendants)

93.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

94.     The criminal proceeding brought against Mr. Lyons was initiated without probable cause.

95.     The Trooper Defendants acted maliciously or for some other purpose other than bringing Mr. Lyons to justice.

96.     Mr. Lyons suffered a tremendous deprivation of liberty as a consequence of the criminal proceeding that was wrongfully brought against him.

97.     The Trooper Defendants intentionally, knowingly, deliberately, maliciously and recklessly omitted uncontradicted exculpatory information in prosecuting Mr. Lyons.

98.     With reckless disregard for the truth, and Mr. Lyons' rights, they made false statements or omissions in prosecuting Mr. Lyons.

99.     The Trooper Defendants themselves doubted their own investigation and prosecution.

100.    The Trooper Defendants wrongfully arrested, filed false charges against, and maliciously and falsely prosecuted Mr. Lyons.

101.    At the time the Trooper Defendants charged Mr. Lyons, they knew, or had reason to know, that they did not have sufficient probable cause to charge him.

102.    The Trooper Defendants woefully failed to properly investigate the incident by failing to timely and properly interview contemporaneous eyewitnesses, and failed to complete any investigation of Mr. Lyons' cell phones.

103.    The Trooper Defendants delayed dropping all charges against Mr. Lyons.

104.    The Trooper Defendants' actions, which culminated in Mr. Lyons' wrongful arrest and wrongful prosecution, constitute malicious prosecution, which is actionable under the Fourth and Fourteenth Amendments of the United States Constitution.

105.    At all relevant times herein, Trooper Defendants acted intentionally, willfully, maliciously and/or in reckless disregard of Mr. Lyons' constitutional rights.

106.    Pursuant to 42 U.S.C. §1988, Plaintiffs seek recovery of compensatory damages, punitive damages, and attorney's fees and costs.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Trooper Defendants in their individual capacity for compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT III- 42 U.S.C. §1983 CLAIM AS A RESULT OF
## PA STATE POLICE POLICY AND CUSTOM
### (Plaintiffs vs. PA State Police)

107.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

108.    At all relevant times herein, the State Police are responsible for the overall selection, hiring, training, and retention of its officers, and is ultimately responsible for the departmental accountability of all members of the police force, such as the Trooper Defendants.

109.    At all relevant times herein, Trooper Defendants acted under the color of state law, and were acting as the State Police's representatives and/or employees or agents.

110.    At all relevant times herein, the Trooper Defendants wrongfully arrested, detained, charged and maliciously prosecuted Mr. Lyons without probable cause.

111.    At all relevant times herein, the State Police developed and/or instituted procedures, policies, practices, or custom which tacitly endorsed and/or permitted the Trooper Defendants to wrongfully arrest, detain, charge and maliciously prosecute Mr. Lyons without probable cause.

112.    At all relevant times herein, the State Police developed and/or instituted procedures, policies, practices or custom which tacitly endorsed and/or permitted the Trooper Defendants to violate Mr. Lyons' constitutional rights with impunity.

113.    At all relevant times herein, the State Police were aware of similar conduct in the past, but failed to take the necessary steps to prevent such conduct from occurring in the future, as demonstrated by the Trooper Defendants' actions in violating Mr. Lyons' constitutional rights.

114.    The State Police's failure caused a loss or deprivation of Mr. Lyons' rights as secured by the United States Constitution.

115.    At all relevant times herein, the State Police had a duty and obligation to ensure that its troopers, such as the Trooper Defendants, properly investigated incidents and to only arrest, detain, charge or prosecute where there was sufficient probable cause.

116.    The Trooper Defendants' conduct demonstrates that the State Police's custom, policy, pattern, procedure, and/or practice resulted in the violation of constitutional rights.

117.    Further, the Trooper Defendants' conduct demonstrates that the State Police deliberately ignored its duties and responsibilities to uphold the law and protect citizens, and that it acted with deliberate indifference at all relevant times.

118.    The conduct of the Trooper Defendants demonstrates that the State Police:

a.  Failed to implement appropriate policies, practices, and procedures to properly investigate potential allegations of criminal offenses;

b.  Failed to implement appropriate policies, practices, and procedures to timely interview potential witnesses to prevent false arrests, and falsely charging innocent citizens;

c.  Failed to take appropriate disciplinary action against the Trooper Defendants who violated the rights of the citizens of the United States and the Commonwealth, in particular Mr. Lyons;

d.  Failed to acknowledge previous instances of its failure to properly investigate allegations of criminal offenses;

e.  Failed to acknowledge that its policies, practices, and procedures were inadequate in properly investigating allegations of criminal offenses;

f.  Failed to properly monitor and/or supervise the Trooper Defendants to ensure that they were properly carrying out their duties; and

g.  Failed to develop appropriate policies, practices, and procedures to ensure that its troopers did not wrongfully arrest and charge innocent citizens.

119.    By failing to properly implement policies, protocols, procedures and/or customs to ensure that its Troopers properly investigated allegations of criminal offenses, and avoid falsely or wrongfully detaining, arresting and/or charging citizens, the State Police exhibited a deliberate indifference to the rights of the citizens of the United States and the Commonwealth, such as Mr. Lyons.

120.    As a direct and proximate result of the State Police's failures, the State Police cultivated, developed, and/or acquiesced in a custom, policy, procedure, or protocol of tolerating or avoiding its Troopers' shortcomings, including, but not limited to, the Trooper Defendants' wrongful arrest, detention and malicious prosecution of Mr. Lyons.

121.    As a direct and proximate result of the State Police's aforementioned failures, Mr. Lyons was caused to suffer great humiliation and embarrassment as a direct and proximate result of being falsely arrested, detained, accused, charged and maliciously prosecuted.

122.    As a direct and proximate result of the State Police's aforementioned failures, Mr. Lyons was caused to suffer pain, fear, loss of liberty, and loss of enjoyment of life, all to his great detriment and loss.

123.    Pursuant to 42 U.S.C. §1988, Plaintiff seeks the recovery of compensatory damages, punitive damages, and attorney's fees and costs.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Trooper Defendants in their individual capacity for compensatory damages, punitive damages, and attorney's fees and costs.

### COUNT IV- FALSE IMPRISONMENT
### (Plaintiffs vs. Trooper Defendants)

124.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

125.    The Trooper Defendants wrongfully arrested, detained, falsely accused and maliciously prosecuted Mr. Lyons.

126.    The Trooper Defendants knew, or had reason to know, that they did not have probable cause to arrest, detain, accuse or charge Mr. Lyons.

127.    The Trooper Defendants woefully failed to properly investigate the incident by failing to timely and properly interview potential witnesses who were present at the Swim Meet, as well as failing to complete any investigation of his phones.

128.    The Trooper Defendants delayed dropping all charges against Mr. Lyons.

129.    However, by the time Trooper Defendants dropped all charges against Mr. Lyons, suffered significant damage to his reputation and standing in the community as a direct and proximate result of Trooper Defendants' conduct.

130.    The Trooper Defendants' collective conduct was extreme, outrageous, intentional and/or reckless.

131.    Mr. Lyons was subject to great humiliation and embarrassment by reason of the Trooper Defendants' false and malicious arrest, detention and seizure of Mr. Lyons.

132.    As a direct and proximate result of Trooper Defendants' collective conduct, Mr. Lyons has suffered, and will continue to suffer, psychological and emotional suffering, and embarrassment and humiliation in the community.

133.    As a direct and proximate result of Trooper Defendants' false arrest and detention, Mr. Lyons has suffered, and will continue to suffer, a loss of life's pleasures.

134.    The Trooper Defendants' actions in falsely arresting and detaining Mr. Lyons constitute extreme and outrageous conduct, which conduct was committed with willful, wanton, reckless and total disregard of his rights, safety and wellbeing, for which he is entitled to punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Trooper Defendants in their individual capacity for compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT V- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiffs vs. Trooper Defendants)

135.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

136.    The conduct of the Trooper Defendants in falsely arresting, charging and maliciously prosecuting Mr. Lyons constitutes extreme and outrageous conduct, which exceeded the bounds of decency and tolerability of a civilized society.

137.    The Trooper Defendants' extreme and outrageous conduct was intentional and/or reckless.

138.    The Trooper Defendants intentionally inflicted emotional distress on the Plaintiffs by falsely arresting, detaining, charging and maliciously prosecuting Mr. Lyons.

139.    The Plaintiffs were subject to great humiliation and embarrassment by reason of Trooper Defendants' false and malicious arrest, detention and seizure of Mr. Lyons.

140.    As a direct and proximate result of the Trooper Defendants' collective conduct, Mr. Lyons suffered, and will continue to suffer, psychological and emotional suffering, and embarrassment and humiliation in the community.

141.    As a direct and proximate result of Trooper Defendants' false arrest and detention, Mr. Lyons has suffered, and will continue to suffer, a loss of life's pleasures.

142.    Trooper Defendants' actions in falsely arresting and detaining Mr. Lyons was committed with willful, wanton, reckless, and total disregard of the rights, safety and wellbeing of Mr. Lyons, for which he is entitled to punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Trooper Defendants in their individual capacity for compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT VI- LOSS OF CONSORTIUM
### (Plaintiff Lynne Lyons vs. Trooper Defendants)

143.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

144.   At all relevant times herein, Mrs. Lyons was, and continues to be, the wife of Mr. Lyons.

145.   As a direct and proximate result of the Trooper Defendants' conduct in falsely arresting, detaining, charging and maliciously prosecuting Mr. Lyons, and the resulting injuries sustained by Mr. Lyons, his spouse, Lynne Lyons, has been in the past, and may in the future be, deprived of the assistance, companionship, consortium, and society of her husband, Mr. Lyons, all of which has been, and will be, to her detriment.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Trooper Defendants in their individual capacity.

> HAMBURG, RUBIN, MULLIN,
> MAXWELL & LUPIN
>
> By: _____
> Steven B. Barrett, Esquire
> Mark F. Himsworth, Esquire
> **Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C.**
> 375 Morris Road
> P.O. Box 1479
> Lansdale, PA 19446
> 215-661-0400

Date: 3/20/18